UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **Bakari Hannah,** *Plaintiff,* v. **Experian Information Solutions, Inc. and Professional Debt Mediation, Inc.,** *Defendants.* | Case Number: 8:21-cv-1382 **JURY TRIAL DEMANDED** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **Bakari Hannah** ("**Mr. Hannah**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, **Experian Information Solutions, Inc.** ("**Experian**"), and **Professional Debt Mediation, Inc.** ("**PDM**") (jointly "**Defendants**") stating as follows:

## PRELIMINARY STATEMENT

1. This is an action brought by Mr. Hannah against PDM for violations of the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et seq.* ("**FDCPA**") and the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**"), and against Experian for violations of the FCRA.

## JURISDICTION AND VENUE

2. Subject matter jurisdiction arises under the FDCPA, 15 U.S.C. § 1692k(d), the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

2. The Defendants are subject to the jurisdiction of this Court pursuant to Florida Statute § 48.193 and Fed. R. Civ. P. 4(k).

3. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391(b)(2) because the acts complained of were committed and / or caused by the Defendants within Polk County, which is in the Middle District of Florida.

## PARTIES

4. Mr. Hannah is a natural person residing in the city of Lakeland, Polk County, Florida and is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

5. **Experian** is an Ohio corporation, with a primary business address of **475 Anton Boulevard, Costa Mesa, CA 92626**.

6. Experian is registered to conduct business as a foreign corporation in the State of Florida, where its Registered Agent is **CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 32301.**

7. Experian is a nationwide Consumer Reporting Agency ("**CRA**") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other

information on consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

8. **PDM** is a Florida corporation, with a primary business address of **8657 Baypine Road, Suite 201, Jacksonville, Florida 32256**.

9. PDM is registered to conduct business in the State of Florida, where its Registered Agent is **Rohan R. Kissoonlal, 8657 Baypine Road, Suite 201, Jacksonville, Florida 32256.**

10. PDM is a furnisher of information to Experian.

11. PDM is registered with the Florida Office of Financial Regulation as a *Consumer Collection Agency* ("**CCA**"), holding license number **CCA0900729**.

12. PDM is a *Debt Collector* within the meaning of the FDCPA, 15 U.S.C. §1692a(6), in that it uses postal mail or another instrumentality of interstate commerce for its business, the principal purpose of which is the collection of debts. Alternatively, PDM regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

## FACTUAL ALLEGATIONS

13. Some time ago, Mr. Hannah had rented an apartment as his primary residence from Windsor Manor Apartments ("**Windsor**") in Tampa, Florida.

14. Mr. Hannah only ever had one lease agreement with Windsor.

15. On or around March 2019, Mr. Hannah vacated his rental with Windsor.

16. Sometime after Mr. Hannah vacated the apartment, Windsor claimed Mr. Hannah owed $5,180 in back rent, damages and/or fees.

17. In August 2019, Windsor sold or otherwise assigned the Debt to PDM.

18. Florida Statute § 559.715 requires a written notice to be sent to the consumer within thirty days of the assignment of a consumer debt.

19. PDM complied with Florida Statute § 559.715 by sending written correspondence to Mr. Hannah.

20. The written letter sent by PDM stated the nature of the debt and request payment.

21. The Debt arose from transactions which were for family, personal, or household purposes, specifically the rental of a personal dwelling, and therefore meets the definition of *Debt* under the FDCPA, 15 U.S.C. § 1692a(5).

**Duplicate Tradelines Unfairly Damage Mr. Hannah's Credit**

22. On or around April 15, 2021, Mr. Hannah requested and obtained a copy of his consumer credit disclosure from Experian.

23. Experian's disclosure to Mr. Hannah included an account reported to it by PDM bearing account number "810900138" (the "**First PDM Tradeline**"). **SEE PLAINTIFF'S EXHIBIT A.**

24. The First PDM Tradeline indicated Mr. Hannah has a past due amount of $5,180, and this balance was accurate as of April 2021.

25. The First PDM Tradeline also indicated that the account was opened in August 2019 and first became delinquent in March 2019.

26. The First PDM indicated the original creditor was Windsor.

27. The First PDM Tradeline was first reported by PDM to Experian in October 2019.

28. Experian's disclosure to Mr. Hannah included a second account furnished to it by PDM (the "**Second PDM Tradeline**"). **SEE PLAINTIFF'S EXHIBIT A.**

29. The Second PDM Tradeline indicated that $5,180 is past due and that the account was first opened in August 2019, and that Windsor was the original creditor.

30. The two PDM tradelines clearly concern the identical, singular, underlying Debt alleged to belong to Mr. Hannah by Windsor.

31. Despite Mr. Hannah having only one lease, and thus only a single $5,180 alleged debt, PDM reported to Experian Mr. Hannah had *two, different* leases and debts with Windsor accounts.

32. Both accounts were reported as having delinquent $5,180 balances.

33. PDM, knew, or should have known, that it was reporting the same account twice to Experian concerning Mr. Hannah.

34. On its face, it would be exceedingly unlikely the same apartment complex would allege two debts from the same renter on the same day, and that this would end up with the same past due amount.

35. PDM began reporting the second tradeline monthly to Experian in January 2020.

36. PDM's reporting of the Debt to Experian is a *Communication* as defined by 15 U.S.C. § 1692a(2) and was in connection with the collection of the Debt.

37. Reporting a debt to a CRA is an attempt to collect the debt alleged therein. *See, e.g., Edeh v. Midland Credit Management, Inc.*, 748 F. Supp. 2d 1030 (D. Minn. 2010) ("The Court has learned, through its work on countless FDCPA cases, that threatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver.")

38. Despite the obvious duplication of the PDM account, Experian included both iterations of the PDM tradeline in reports sold regarding Mr. Hannah, and in its disclosures to Mr. Hannah, after January 2020.

39. Due to numerous and obvious red flags, Experian knew, or should have known, that PDM was reporting the same account twice.

40. Experian has no reasonable procedures in place to prevent obvious duplicate accounts from appearing multiple times in a consumer's credit history.

41. Experian's inclusion of the duplicate tradeline caused significant harm to Mr. Hannah's credit scores, as the number of charged-off accounts on a consumer's report adversely affects the consumer's scores.

### Mr. Hannah's Dispute of the Duplicate Tradelines

42. In April 2021, Mr. Hannah disputed the false doppelganger PDM tradeline to Experian.

43. Mr. Hannah indicated in his dispute that the tradeline was a duplicate.

44. Experian, upon receipt of Mr. Hannah's dispute, sent PDM an *Automated Consumer Dispute Verification Requests* ("**ACDVs**") through a system known as e-OSCAR.

45. PDM responded to the ACDV, stating that the tradeline required an update, but otherwise verifying the reported information as accurate.

46. PDM did not delete *either* iteration of its tradeline.

47. Indeed, PDM continued to report the duplicate tradelines to Experian, monthly.

48. PDM did, however, update one iteration of its tradeline to change the date "First Reported" to November 2019 from October 2019.

49. On or around May 4, 2021, Mr. Hannah requested and obtained an updated copy of his consumer credit disclosure from Experian.

50. Experian's May 4, 2021 disclosure to Mr. Hannah contains the PDM tradelines post-dispute. **SEE PLAINTIFF'S EXHIBIT B.**

51. Metro 2 reporting guidelines serve as industry standards and are promogulated by the Consumer Data Industry Association ("CDIA"), an international trade association representing over 140 members involved in credit reporting, mortgage reporting, check verification, tenant and employment screening, collection services, and fraud verification services.

52. In cooperation with the major CRAs, CDIA publishes the Metro 2 reporting standards to assist furnishers with their compliance requirements under the FCRA.

53. A furnisher of information to a CRA, such as PDM, is required, upon receipt of notice of dispute from a CRA, to conduct a reasonable investigation into the dispute. 15 U.S.C. § 1681s-2b.

54. PDM failed to conduct a reasonable investigation into Mr. Hannah's dispute.

55. Any reasonable investigation would have determined that it was reporting the same account, twice, to Mr. Hannah's credit, and that at least one iteration of the tradeline needed to be deleted.

56. Instead of deleting one iteration of the tradeline, PDM actually made its reporting less accurate by changing the date "first reported" on one iteration of the tradeline.

57. Likewise, a CRA, such as Experian, is required to conduct its own investigation into a dispute from a consumer. 15 U.S.C. § 1681i(a)(1)(A).

58. However, on information and belief, rather than conduct its own independent investigation, Experian merely relied on the ACDV responses from PDM, blindly accepting the ACDV results and updating its reporting accordingly.

59. Had Experian conducted its own investigation, it would have, or should have, realized that the disputed tradeline was in fact the same underlying account as the other PDM tradeline, and that at least one iteration needed to be deleted.

60. Experian requires its data furnishers, like PDM, to comply with Metro 2 standards.

61. Yet, when Experian receives reports which are out-of-compliance with Metro 2 standards, rather than reject the report or request an amended report from the furnisher, Experian simply includes the data, as-is, into the consumer's credit file.

62. Experian continues to include both iterations of the PDM tradeline in reports sold regarding Mr. Hannah, despite the obvious similarities in the tradelines and the lack of compliance with Metro 2.

### Failure to Use Reasonable Procedures

63. The FCRA is clear in its requirement that Experian, as a CRA, is required to prepare accurate reports:

> Accuracy of Report.  Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.  15 U.S.C. §1681e(b).

64. Experian knows that including duplicate, error-riddled information in reports sold is not a reasonable procedure to ensure maximum possible accuracy of reports sold.

65. On its face, Experian's policies do not reasonably ensure the "maximum possible accuracy" of credit reports produced, despite being required to do so under the FCRA.  15 U.S.C. § 1681e(b).

66. Despite this, records from Experian indicate that it has sold at least 37 reports to Mr. Hannah's creditors and potential creditors since January 2020. **SEE PLAINTIFF'S EXHIBIT C.**

67. Each of the 37 creditors and potential creditors referenced in Exhibit E requested a credit report from Experian regarding Mr. Hannah.

68. In each instance, Experian was required to follow reasonable procedures to assure maximum possible accuracy of the information concerning Mr. Hannah.

69. Including obviously duplicate account is inherently an unreasonable procedure for assuring maximum possible accuracy.

70. Experian thus failed to use reasonable procedures when preparing the credit reports sold to each lender.

71. As a result of Experian's failure to prepare reports utilizing procedures to ensure maximum possible accuracy, Mr. Hannah has suffered an impaired ability to obtain credit and services, as well as economic losses.

72. Indeed, Mr. Hannah has attempted on multiple occasions to secure financing for an automobile, applying first from January 2020 to May 2020 and then again starting in January 2021.

73. Mr. Hannah's applications were reviewed by potential lenders in each instance, which received an errant consumer report from Experian.

74. The duplicate tradelines included in Experian's reports caused unjust harm to Mr. Hannah's credit scores and negatively affected his ability to obtain an auto loan.

75. The Defendants' false reporting has also caused Mr. Hannah to suffer embarrassment, damage to reputation, and emotional distress from being denied credit and having to dispute the false accounts on his credit report.

**Experian's Awareness of Inclusion of Out-Of-Compliance Furnisher Reports**

76. Experian is aware that it frequently accepts information furnished to it which does not comply with Metro 2 guidelines and is often out-of-compliance.

77. However, Experian's primary concern is to produce reports about consumers with as much data as possible – a goal at odds with its requirement to utilize reasonable procedures to ensure maximum possible accuracy.

78. Experian has had judgment rendered against it on numerous occasions for violations of the FCRA's accuracy requirement. *See, e.g., Miller v. Experian Info. Servs., LLC*, 3-11-CV-01231-BR (D. Or. Nov. 28, 2012 (jury awarded over $18 million to a 57-year-old nurse whom Experian had continuously included wildly erroneous information in its reports it furnished about her).

79. Experian could reasonably foresee that selling reports which contained significant, albeit fabricated, derogatory payment history would cause significant harm to Mr. Hannah.

80. Experian's knowing and repeated conduct warrants an award of punitive damages.

81. Mr. Hannah has hired the undersigned law firm to represent him in this matter and has assigned the firm his right to fees and costs.

## COUNT I
## PDM'S VIOLATIONS OF THE FDCPA

82. Mr. Hannah adopts and incorporates paragraphs 1 – 81 as if fully restated herein.

83. PDM violated **15 U.S.C. § 1692e and 1692e(10)** in that PDM used false representations and deceptive means to collect a debt when it reported a single account twice to Experian, thereby falsely indicating that Mr. Hannah had two separate alleged debts and owed twice the amount.

84. PDM violated **15 U.S.C. § 1692e(2)(a)** in that PDM made false representations about the character, amount and legal status of a debt, when it reported a single account twice to Experian, thereby falsely indicating that Mr. Hannah had two separate alleged debts and owed twice the amount.

85. PDM violated **15 U.S.C. § 1692e(8)** when PDM communicated credit information which was known to be false, or should have been known to be false, when it reported a single account twice to Experian, thereby falsely indicating that Mr. Hannah had two separate alleged debts and owed twice the amount.

86. PDM violated **15 U.S.C. § 1692f(1)** in that PDM attempted to collect an amount not allowed by law. Specifically, it attempted to collect an additional

$5,180 from Mr. Hannah, when this amount was not expressly authorized by any agreement between Mr. Hannah and Windsor.

87. PDM's conduct renders it liable for the above-stated violations of the FDCPA, and Mr. Hannah is therefore entitled to statutory damages not to exceed $1,000.00 in addition to other relief as this Court deems appropriate.

**WHEREFORE,** Mr. Hannah respectfully requests that this Court enter judgment against PDM, and for her, as follows:

   a. Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

   b. Actual damages, for economic harm and lost credit opportunities, pursuant to 15 U.S.C. § 1692k(a)(1);

   c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

Such other relief that this Court deems just and proper.

## COUNT II
## EXPERIAN'S VIOLATIONS OF THE FCRA

88. Mr. Hannah adopts and incorporates paragraphs 1 - 81 as if fully stated herein.

89. Experian violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of consumer reports sold regarding Mr. Hannah when Experian sold at least **37 reports** which

contained a duplicate tradeline regarding an alleged debt reported by PDM. This inaccuracy falsely represented to third-parties that Mr. Hannah had over $5,000 of additional consumer debt.

90. Experian violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation into Mr. Hannah's dispute. Even a cursory examination of the two tradelines would have revealed their duplicitous nature. Experian did not contact the consumer or original creditor, and instead relied solely on PDM's affirmation.

91. Experian's conduct was willful and intentional, or, alternately, was done with reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy and to investigate consumer disputes, and its policies could reasonably be foreseen to cause harm to Mr. Hannah.

**WHEREFORE,** Mr. Hannah respectfully requests this Honorable Court enter judgment against Experian for:

    a.     The greater of statutory damages of **$1,000** per incident (for a total of **$37,000,** based solely upon information known at the time of filing), pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1) or Mr. Hannah's actual damages for loss of credit opportunities and related economic and non-economic injuries;

    b.     Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

    c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

    d.    Such other relief that this Court deems just and proper.

## COUNT III
## PDM'S VIOLATIONS OF THE FCRA

92.    Mr. Hannah adopts and incorporates paragraphs 1 - 81 as if fully stated herein.

93.    PDM violated **15 U.S.C. § 1681s-2(b)** when it failed to conduct a reasonable investigation, upon receiving notice of a dispute by Mr. Hannah from Experian in April 2021. Had PDM conducted a reasonable investigation, it would have realized that it was furnishing the same account twice to Experian, across two different tradelines, at least one of which required deletion. Instead of deleting one or both tradelines, PDM actually updated its reporting to change the date "first reported".

94.    PDM's conduct was willful and intentional, or, alternately, was done with reckless disregard for its duties under the FCRA to reasonable investigate consumer disputes, and its policies could reasonably be foreseen to cause harm to Mr. Hannah.

**WHEREFORE,** Mr. Hannah respectfully requests this Honorable Court enter judgment against PDM for:

a.  The greater of statutory damages of **$1,000** per incident, pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1) or Mr. Hannah's actual damages for loss of credit opportunities and related economic and non-economic injuries;

b.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.  Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

d.  Such other relief that this Court deems just and proper.

## JURY TRIAL DEMANDED

Mr. Hannah hereby demands a trial by jury on all issues so triable.

Respectfully submitted on **June 8, 2021**, by:

**SERAPH LEGAL, P. A.**

/s/ *Bridget L. Dow*
Bridget L. Dow, Esq.
Florida Bar No.: 1022866
BDow@seraphlegal.com
/s/ *Bryan J. Geiger*
Bryan J. Geiger, Esq.
FL Bar #: 119168
BGeiger@SeraphLegal.com
1614 N. 19th St.
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
*Counsel for Plaintiff*

## **EXHIBIT LIST**

A    Mr. Hannah's Experian Disclosure, April 15, 2021, PDM Tradelines
B    Mr. Hannah's Experian Disclosure, May 5, 2021, PDM Tradelines
C    Mr. Hannah's Experian Disclosure, May 5, 2021, Inquiries